## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID SULLIVAN and KATHLEEN SULLIVAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RUST-OLEUM CORPORATION, RPM INTERNATIONAL INC., and SYNTA INC.,<br><br>Defendants. | CASE NO.  3:15-cv-00023-NJR-DGW<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

1.      Plaintiffs David Sullivan and Kathleen Sullivan ("Plaintiffs") by and through their undersigned counsel, on behalf of themselves and all other persons similarly situated, bring this Class Action Complaint against Defendants Rust-Oleum Corporation, RPM International Inc., and Synta, Inc. (collectively "Defendants"), and allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigations conducted by their attorneys.

2.      Plaintiffs bring this class action individually and on behalf of the Class defined below against the Defendants to obtain relief, including, among other things, damages and

declaratory relief. This class action is brought to remedy violations of law in connection with Defendants' design, manufacture, marketing, advertising, selling and warranting of their Rust-Oleum Restore paint products ("Rust-Oleum paint") used to resurface outdoor wood and concrete decks and patios, as well as related and attached structures. Defendants' paint product contains serious design and manufacturing defects, making them susceptible to bubbling, peeling, cracking, flaking, chipping, and general degradation after proper application.

3.      The Rust-Oleum paint fails prematurely, which requires consumers to replace the product at their expense. As such, Plaintiffs assert claims for violation of the Magnuson-Moss Act, breach of implied warranties, breach of express warranty, violation of the Illinois Consumer Protection Laws, unjust enrichment, negligent misrepresentation, negligence, and declaratory and injunctive relief.

4.      Defendants designed, manufactured, marketed, advertised, warranted and sold Rust-Oleum paint to Plaintiffs and the Class as well as the general public. Defendants advertised that Rust-Oleum was fit for the ordinary purpose for which such goods were used and satisfaction guaranteed.

5.      Rust-Oleum paint is a water-based acrylic paint with a blend of inorganic and organic pigments.

6.      Defendants warrant that its Rust-Oleum paint is designed to resiliently protect a consumer's existing decking and related structures with minimal maintenance.

7.      Indeed, Defendants advertise on their website that the Rust-Oleum paint offers "a high-performance, low-maintenance, long-lasting alternative to the endless cycle of repairing and repainting" structures.

2

8.     Defendants also represent that their paint is thicker than ordinary paint, which allows it to mask imperfections such as cracks and splinters, and that their paint restores decks and patios to a uniform presentation.

9.     However, Defendants knew, prior to the time of sale that their Rust-Oleum paint was defective, and in fact cracked, chipped, bubbled, peeled, and generally deteriorated shortly after application and before the warranty period expired.

10.     Plaintiffs relied on Defendants' representations, and as a result of Defendants' failure to properly develop, test, and ensure that its Rust-Oleum paint was properly designed Plaintiffs and the Class have suffered damages.

11.     Defendants are responsible and liable for, among other things, the costs of removing and replacing the Rust-Oleum paint installed in the homes, offices, buildings and other structures of Plaintiffs and members of the proposed Class, as well as other related consequential damages that resulted from Defendants' defective Rust-Oleum paint that has failed prematurely.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because Plaintiffs and Defendants are of diverse citizenship and the aggregate amount in controversy exceeds five million dollars ($5,000,000.000) exclusive of interest and costs. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the property that is the subject of this action is situated in this District, substantial events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants are subject to personal jurisdiction in this District.

13.     Defendants contemplated the sale, distribution, and use of Rust-Oleum paint products in this District.

14.     As a result of the Defendants' design, manufacture, marketing, advertising, selling and warranting of Rust-Oleum paint products to purchasers throughout Illinois, the Defendants obtained the benefits of the laws of Illinois commerce.

15.     Defendants conducted systematic and continuous business activities in and throughout the state of Illinois through the promotion of marketing of its business.

## PARTIES

16.     Plaintiffs David and Kathleen Sullivan are married residents of Murphysboro, Illinois. They purchased and used Rust-Oleum Restore brand paint on their residential deck in October 2013.

17.     Defendant Rust-Oleum Corporation is a subsidiary of RPM International, Inc. Rust-Oleum Corporation makes protective paints and coatings for homes and businesses. Its corporate headquarter is located in Vernon Hills, Illinois.

18.     Defendant RPM International Inc. is a Delaware corporation that has its principal place of business in Medina, Ohio. RPM International Inc. is the holding company for Rust-Oleum Corporation and Synta Incorporated.

19.     Synta, Incorporated is a subsidiary of RPM International, Inc. Synta Incorporated is a wholesale paint manufacturer. Its corporate headquarters are located in Clarkston, Georgia.

## COMMON FACTUAL ALLEGATIONS

20.     Defendants hold themselves out to the public as manufacturers of durable and long lasting paint products with "trusted quality since 1921." Defendants designed, developed, manufactured, tested, marketed, warranted and sold Rust-Oleum paint products directly and indirectly, through distributors, to Plaintiffs, Class members, subcontractors, and/or agents.

21.     Defendants represent to consumers that Rust-Oleum paint is designed to refresh decks and patios by forming a "tough [sic] resilient coating over existing deck" which will "last for years with less maintenance than deck paints or stains! Satisfaction guaranteed."

22.     Defendants provided the following limited lifetime warranty on all of the Rust-Oleum Restore paint products: "[Defendants] warrant complete satisfaction with the performance of this product for as long as you own or reside in your home when the product has been applied according to the directions provided."

23.     Despite Defendants' express and implied warranties and claims that the products are fit for ordinary purposes, Rust-Oleum  paint fails to deliver as promised and expected. Furthermore, Defendants have failed to fully honor existing warranties and failed to compensate Plaintiffs under their warranties and applicable law. Moreover, because Defendants had been aware of the defective nature of their Rust-Oleum paint, any limitations on Defendants' warranties are unconscionable and/or fail their essential purpose because Rust-Oleum paint was defective at the time Plaintiffs and members of the class acquired Rust-Oleum paint.

24.     Prior to purchasing the defective products, Plaintiffs and members of the class had no notice of the defect and no way of learning about the defect other than from Defendants.

25.     The bargaining power between Plaintiffs (and members of the Class) and Defendants was unequal and any limitations on the warranty are substantially one-sided, making such limitations unconscionable.

26.     Despite Defendants' representations to consumers, Rust-Oleum paint is plagued with design and manufacturing flaws that cause the paint to bubble, peel, crack, flake, and chip shortly after installation.

27.     Additionally, removal and replacement of the defective Rust-Oleum paint requires a labor-intensive, expensive process that may damage or destroy the underlying substrate and carries with it substantial costs to Plaintiffs and members of the class.

28.     Defendants and their authorized agents and distributors made incorrect representations about their product with the intent and purpose of inducing suppliers, builders, and consumers to purchase and use Rust-Oleum paint on their decks, patios and other structures in residential and commercial structures in the state of Illinois and elsewhere.

29.     Upon information and belief, Defendants also made numerous material omissions in its advertising and promotional literature and uniformly withheld important information relating to the design, reliability, and performance of Rust-Oleum paint.

30.     Defendants continue to make false representation about the quality and fitness of the Rust-Oleum paint.  For instance, in a video which appears on Defendants' YouTube page titled "Rust-Oleum Restore Case Study," Defendants claim that "Restore is different than a lot of other decking protectors because it's ten times thicker than stains and paints.  It's going to lock down splinters . . . fill in cracks . . . fill in nail holes."  Defendants also advertise that Restore "will last 10 to 12 years."  *See* https://www.youtube.com/watch?v=-IcXA8966b4.

6

31.     Furthermore, in a television advertisement, Defendants claim that they "created a Restore designed to refresh and designed to repair" worn out decks to a "durable finish." *See* http://www.ispot.tv/ad/7KAQ/rust-oleum-restore-compare.

32.     Had Defendants not withheld and omitted important information about the design, reliability, and performance of Rust-Oleum paint, Plaintiffs and members of the Class would not have purchased the products or used them on their properties.

33.     Defendants knew or should have known that the foregoing defects made the Rust-Oleum paint susceptible to premature failure through various processes.

34.     Defendants' design and materials choices have created a product that begins to fail on its first day of use, despite proper installation and use in its intended environment.

35.     Because of the defective design and manufacture, Defendants' Rust-Oleum paint failed in its intended purpose.

36.     Because of the defective design and manufacture, Defendants' Rust-Oleum paint is inherently defective and is substantially certain to fail within the express warranty provided by Defendants or the useful life of the decking.

37.     Upon information and belief, Defendants did not test their Rust-Oleum paint in its anticipated environments before selling the product to the public.

38.     Upon information and belief, Defendants conducted inadequate testing on Rust-Oleum paint and failed to test for things that they knew or should have known would lead to premature failure.

39.     Upon information and belief, Defendants failed to investigate or test whether well-known and expected conditions would lead to premature failure of Rust-Oleum paint.

7

40.     Upon information and belief, Defendant Rust-Oleum Corporation limits its offer of warranty payment to their estimate of the purchase price of Rust-Oleum paint—just a fraction of the costs associated with the replacement of the Rust-Oleum paint.

41.     Defendants knew or reasonably should have known that Rust-Oleum paint products were defective prior to the time of sale, and intentionally concealed that material information (and the truth concerning their product) from Plaintiffs and the general public, while continually marketing Rust-Oleum paint as a dependable and reliable product. Defendants' acts of negligent misrepresentation include failing to disclose that their Rust-Oleum paint was defectively manufactured or designed and would deteriorate in less than the expected lifetime, leading to damage to the very structures they were purchased to protect.

42.     Because the defects in Rust-Oleum paint are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Rust-Oleum paint was defective and unreliable and certain to fail until after painting their entire decks, despite their exercise of due diligence.

43.     Defendants had a duty to disclose that their Rust-Oleum paint was defective, unreliable, and inherently flawed in its design and manufacture.

**PLAINTIFFS' EXPERIENCE WITH RUST-OLEUM RESTORE**

44.     Plaintiffs David and Kathleen Sullivan purchased Rust-Oleum Restore brand paint in October 2013 at Wright Do-It Center in Murphysboro, Illinois.

45.     Prior to purchasing Rust-Oleum paint, Plaintiffs reviewed Defendants' website (created by Rust-Oleum Corporation to market Rust-Oleum paint). Specifically, Plaintiffs viewed promotional videos presented by Defendants on their website as well as at

retail outlets. (Upon information and belief, RPM International Inc. and Synta, Inc. participated in Rust-Oleum paint marketing.)

46.    Prior to purchasing Rust-Oleum's Restore paint, Plaintiffs relied on Defendants' reputation, as well as Defendants' advertisements, including but not limited to print and internet advertising and marketing materials.

47.    Plaintiffs applied Rust-Oleum Restore to their deck by following Defendants' instructions for preparation and application.

48.    Within only one (1) month of applying Defendants' Rust-Oleum Restore brand paint to their deck, the Sullivans noticed that the Rust-Oleum paint on their deck was beginning to chip, crack and generally deteriorate.

49.    The problem has only continued to worsen with the passage of time and will continue to do so until it is fully removed.

50.    Pictures of Plaintiffs' deck subsequent to applying the Rust-Oleum Restore paint can be seen below:

9

51.     In June 2014 Plaintiffs contacted Rust-Oleum via email to notify Defendants of the chipping, cracking and deterioration their deck was experiencing and to ask what could be done to remedy, prevent or restore the damage and deterioration they were experiencing.

52.     In response to their June 2014 inquiry, Plaintiffs were asked to fill out a form from Defendants asking how much Rust-Oleum paint they purchased and when they purchased the product.  Additionally, Defendants asked Plaintiffs to submitted pictures of their decking.  Plaintiffs filled out this form and submitted it with pictures of their decking to Defendants.

53.     As a result of the claim form Plaintiffs submitted, they received a check for approximately $300.00, which represents the amount they spent on Defendants' Rust-Oleum  Restore  paint exclusive of any additional costs.

54.     In an effort to remove the unsightly chipped and cracked paint, Plaintiffs have hired an individual to power wash their deck which has cost Plaintiffs approximately $200 in labor costs.  Because only a small portion of their decking has been cleaned thus far, Plaintiffs will continue to pay the labor costs to finish the cleaning of their deck.

## CONSUMER COMPLAINTS ABOUT RUST-OLEUM RESTORE

55.     Plaintiffs are not alone in their experience with the defective Rust-Oleum Restore paint.  Indeed, numerous negative reviews and complaints have appeared on the Internet.  For instance, on Amazon.com, Rust-Oleum Restore paint received 151 total reviews.  Of those 151 reviews, 118 gave the product 1-star (the lowest rating on Amazon.com's rating scale).

56.     Below are just a few consumer complaints from Amazon.com and other websites:

**On December 23, 2014, Erin F. Gentile gave the product 1 star and wrote:**

Deserves ZERO STARS!! Faulty product! Lives up to ZERO of it's promises. I'm so angry!
Applied in September this year -- followed directions EXACTLY. Looked good for about 48
hours, then started peeling, chipping and disintegrating as weather became colder and wetter. Just
used my shop vac to remove gallons of sandy mess from front porch and steps. Why is this product
allowed to be sold anywhere??

*See* http://www.amazon.com/Rust-Oleum-49104-Deck-Concrete-1-Gallon/product-
reviews/B00BIOBP7Y/ref=cm_cr_pr_hist_1?ie=UTF8&filterBy=addOneStar&showViewpoints=0
&sortBy=bySubmissionDateDescending

**On August 17, 2014, K. Cooper gave the product 1 star and wrote:**

Total waste of money. Lots of money. Didn't last the winter. Huge chunks are missing. For all that
time prepping, applying, and the ton of money we paid, I am beyond disappointed. We are not
painting novices. This product is terrible. I am really disappointed in Rustoleum. I used their oil
paint on my cupboards 7 years ago and they still look great. I trusted the Rustoleum name and it
was a mistake. I will contact the company but I'm sure it will somehow be our fault. For people in
northern Michigan, the only one who did not have peeling was someone with a roof over their
deck. Everyone else I talked to up here had problems.

*See* http://www.amazon.com/Rust-Oleum-49104-Deck-Concrete-1-Gallon/product-
reviews/B00BIOBP7Y/ref=cm_cr_pr_btm_link_next_2?ie=UTF8&filterBy=addOneStar&pageNu
mber=2&showViewpoints=0&sortBy=bySubmissionDateDescending

12

**On May 20, 2014, Cathy from Munster, IN gave the Restore product a "1-star" review and wrote:**

So much time on prepping the old deck and followed the directions for cleaning. Applied first coat on completely dried deck, in the shade, 75 degree morning. Had to buy another 4 gallon bucket. Applied 2nd coat, day 2.. Another beautiful fall day in the Chicago area. Morning shade. We loved it. Looked great. Happy. Then winter came.... it looks horrible now...... I'm sickened and disappointed!! I busted my butt. Back pain from bending over preparing, rolling, and rolling again. Pain was worth the result, but the result did not last a year!! Rustoleum needs to refund my money and pay for someone to pressure wash this Restore flaking mess off my deck now!

*See* http://www.homedepot.com/p/Restore-5-gal-4X-Deck-Coat-41500/204752026.

**On January 29, 2014, Sylvienjeff wrote:**

We just got through using Restore for decks/concrete. We did everything according to directions. We waited for multiple days of sunshine before we started project. We did not dilute. First coat Sun. 1/26 @ 8:00 am-finish 12:00. Second coat Mon. 1/27 @12:30 pm-finish 4:30 (24 hours before second coat because it wasn't dry enough). Wasn't dry enough to walk on by Tuesday, wasn't dry enough to walk on by Wednesday, today. Wednesday 1:45 we had rain. The whole pool deck is melting away. Totally washing off!!!!! From second coat on Monday to Wednesday, there was 48 hours of drying time less about 3 hours. We had sunshine all those days, and now it's melting away! It never dried! It's going to cost us a fortune to have someone come in and un-do what has happened, and re-do the entire deck. We have invested $700.00 for product in this project, not to mention our hard work, and a day off from work on Monday to put 2nd coat down! Just went to look again. We have a catastrophe here. The deck drain is now clogged with product,

and it's going everywhere. My fear is that it goes in the pool which if it keeps raining, it will. I wish we knew how to get this stuff off. Maybe if we keep it wet, we can power wash it off, and start again. We're so upset about this. Our deck looked bad to begin with, old and cracked....But it looked better then than it does now!!!!!!!!!

*See*    http://www.city-data.com/forum/house/1879095-anyone-have-experience-rustoleum-deck-concrete-3.html

**On May 28, 2014, n1iwv wrote:**

I applied Rust-Oleum Restore to my deck mid August 2013.

We followed the manufacture's instructions religiously. We also watched their video for product application. We used Rust-Oleum deck cleaner for preparation and their special roller for application.

Fast forward to March 2014 and this stuff is peeling and cracking everywhere.

The underline failure mode is either peeling up in large sheets or it crumbles when you step on it.

The major problem is that in sections of the deck where it neither peels nor crumbles, its removal is all but impossible without destroying the wood decking.

The only thing I can do now is pull up the fir decking and either replace it (very expensive) or turn the decking over, put it back down and use a conventional stain (labor intensive).

Needless to say, "I am not happy".

*See*    http://www.city-data.com/forum/house/1879095-anyone-have-experience-rustoleum-deck-concrete-4.html#ixzz3O3bERhrY

## CLASS ACTION ALLEGATIONS

57.    This action is brought and may be maintained as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Plaintiffs and all others similarly situated. The proposed Class is defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, in which Rust-Oleum paint products is or has been used.

> Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which have a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Additionally or alternatively, Plaintiffs propose as Illinois class or subclass (the "Subclass") defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in Illinois, in which Rust-Oleum paint products is or has been used.

> Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which have a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

58.    Plaintiffs reserve the right to redefine the Class(es) prior to class certification.

59.    The members of the proposed Class are so numerous that joinder of all members is impracticable.

60.    The exact number of Class members is unknown as such information is in the exclusive control of Defendants. However, due to the nature of the trade and commerce involved, Plaintiffs believe the Class consists of thousands of consumers.

15

61.     Common questions of law and fact affect the right of each Class member and a common relief by way of damages is sought for Plaintiffs and Class members.

62.     The harm that Defendants caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

a.      Whether Rust-Oleum paint is defective in that it fails prematurely and is not suitable for use as an exterior decking product for the length of time advertised, marketed, and warranted;

b.      Whether Rust-Oleum paint is defectively designed or manufactured;

c.      Whether Defendants sold and entered a defective product into the stream of commerce in Illinois and other states;

d.      Whether Rust-Oleum failed to perform in accordance with the reasonable expectations of ordinary consumers;

e.      Whether Defendants failed to prevent damages which occurred as a result of defective Rust-Oleum paint they designed, manufactured and placed into the stream of commerce;

f.      Whether Defendants properly warned consumers about the reasonably foreseeable defective nature of Rust-Oleum paint;

g.      Whether Defendants were unjustly enriched by the sale of defective Rust-Oleum paint;

h.       Whether Defendants breached its warranties as represented and engaged in fraudulent, false, deceptive or misleading advertising and misconduct with respect to the handling of warranty claims;

i.      Whether Defendants omitted material information when they sold Rust-Oleum paint;

j.      Whether members of the proposed Class have sustained damages and, if so, the proper measure of such damages; and

k.      Whether Defendants should be declared financially responsible for notifying all Class members about their defective Rust-Oleum paint and for all damages associated with the incorporation of such decking into Class members' homes,

residences, buildings, and other structures.

63.      The claims and defenses of the named Plaintiffs are typical of the claims and defenses of the Class. Plaintiffs and all members of the class own or have owned homes, residences, or other structures on which Rust-Oleum paint has been used. The product has failed, and will continue to fail prematurely. The named Plaintiffs, like all Class members, have been damaged by Defendants' conduct in that they have incurred or will incur the costs of repairing or replacing their decks and repairing the additional property and structure damaged by the Rust-Oleum paint's premature failure. Furthermore, the factual basis of Defendants' conduct is common to all Class members and represents a common thread of deliberate, fraudulent, and negligent misconduct resulting in injury to all members of the Class.

64.      The named Plaintiffs will fairly and adequately assert and protect the interests of the Class. Specifically, they have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class and they have no conflict of interest that will interfere with the maintenance of this class action.

65.      A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.      The common questions of law and fact set forth herein predominate over any questions affecting only individual class members;

b.      The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

c.      There are no unusual legal or factual issues which would create manageability problems;

d.      Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

e.    Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

f.    The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which class members can, as a practical matter, recover. However, the claims of individual Class members are large enough to justify the expense and effort in maintaining a class action.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

66.    Plaintiffs and putative members of the Class are within the applicable statute of limitation for the claims presented here. Defendants' failure to disclose this known but non public information about the defective nature of their Rust-Oleum paint – information over which they had exclusive control – and because Plaintiffs and Class Members therefore could not reasonably have known that the Products were defective, Defendants are estopped from asserting any statute of limitation defenses that might otherwise be applicable to the claims asserted herein.

## CAUSES OF ACTION

## COUNT I
### (VIOLATION OF MAGNUSON-MOSS ACT)

67.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

68.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (the "Act") in response to widespread complaints from consumers that many warranties were misleading and deceptive. The Act imposes civil liability on any "warrantor" for, *inter alia*, failing to comply with any obligation under a written warranty and/or implied warranty. *See* 15

U.S.C. § 2310(d)(1).

69.    Rust-Oleum paint products are "consumer products" as that term is defined by 15 U.S.C. §2301(1).

70.    Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. §2301(3).

71.    Defendants are "warrantors" and "suppliers" as those terms are defined by 15 U.S.C. §2301(4) and (5).

72.    Defendants have failed to remedy the defects associated with Rust-Oleum paint, despite knowledge of its propensity to prematurely bubble, peel, crack, flake, chip, and degrade after application.

73.    By Defendants' conduct as described herein, including Defendants' knowledge of the defective Rust-Oleum paint, and its actions, and inaction, in the face of that knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

74.    As a result of Defendants' breach of implied warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Rust-Oleum paint, obtain damages and equitable relief, and obtain attorneys' fees and cost pursuant to 15 U.S.C. §2310.

## COUNT II
### (BREACH OF IMPLIED WARRANTIES)

75.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

76.    Defendants designed, manufactured, marketed, advertised, warranted and sold Rust-Oleum paint for purposes of its eventual sale to retail buyers.

19

77.     Defendants impliedly warranted that Rust-Oleum paint products were properly designed, developed, manufactured, distributed, marketed, sold, and installed and that the designs and materials were proper and of workmanlike quality.

78.     Defendants knew and intended that Rust-Oleum paint would be constantly applied on exterior decks and patios throughout the United States where it would be exposed to high temperature and humid conditions in the summer, freezing temperatures and extremely dry air in the winter, and repeated freeze-thaw cycles.

79.     Rust-Oleum paint is not merchantable because it has a propensity to bubble, peel, crack, flake, chip, or otherwise prematurely degrade that renders it unfit for the ordinary use of deck constructions and the quality is objectionable in the trade.

80.     Defendants knew that Plaintiffs and the Class would use Rust-Oleum paint to cover and protect decks and patios, and Plaintiffs and the Class relied upon Defendants' skill and judgment to furnish suitable decking material.  Rust-Oleum paint is not fit for its intended purpose because it has a propensity to bubble, peel, crack, flake, chip, or otherwise prematurely degrade.

81.     Plaintiffs and the Class relied upon said warranties and the claims, skill, expertise, and quality assurance of Defendants' workers to provide suitable goods.

82.     Defendants breached said warranties by failing to provide adequate and proper designs, calculations, or materials in n the design and manufacture of Rust-Oleum paint.

83.     Rust-Oleum paint fails to perform in accordance with the reasonable expectations of Plaintiffs and the Class and the benefits of the design of Rust-Oleum paint do not outweigh the risk of its failure.

20

84.     Defendants had, and have, a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of Rust-Oleum paint; Defendants further had, and have, a duty not to put defective products on the market.

85.     But for Defendants' breach of implied warranty, Plaintiffs and the proposed Class would not have sustained damages.

86.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class have suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

87.     Plaintiffs, on behalf of themselves and all other similarly situated, demand judgment against Defendants for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

**COUNT III**
**(BREACH OF EXPRESS WARRANTY)**

88.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

89.     Defendants made affirmations of fact and promises to Plaintiffs and members of the Class which related to Rust-Oleum paint as more fully described herein.

90.     Defendants' affirmation of fact and promises became part of the basis of the bargain between the parties.

91.     These affirmations of fact and promises created an express warranty that Rust-Oleum paint would conform to Defendants' affirmations and promises.

92.     Defendants uniformly warranted all of Rust-Oleum paint against defects in material or workmanship at a time when they knew that it suffered from serious defects and,

nevertheless, continued to market and sell Rust-Oleum paint with this express warranty.

93.     The misrepresentations were made by Defendants to induce Plaintiffs and the Class members to purchase, and were material factors in their decisions to purchase Rust-Oleum paint.

94.     Defendants are obligated under the terms of their written warranty to replace the defective Rust-Oleum paint sold to Plaintiffs and Class members.

95.     Defendants have breached their written warranty, as set forth above, by supplying the Rust-Oleum paint in a condition which does not meet the warranty obligations undertaken by Defendants, and by failing to repair the damages caused by the defective product.

96.     As set forth above, Defendants' warranty fails in its essential purpose and, accordingly, Plaintiffs and Class members cannot and should not be limited to the remedies set forth in the written warranty and instead should be permitted to recover all measures of appropriate relief.

97.     The limitations of damages and the limitations contained in the express warranty provisions are harsh, oppressive and one-sided. The limitations related to the amount of damages, the type of remedies available to Plaintiffs and Class Members are unconscionable when Defendants knew or should have known that there are defects in the design and manufacturing of Rust-Oleum paint.

98.     As a direct and proximate result of Defendants' conduct and failure to conform to representations in breach of Defendants' express warranties, Plaintiffs and Class members have suffered damages, injury in fact and/or ascertainable loss in an amount to be determined at trial.

## COUNT IV
### (VIOLATION OF ILLINOIS CONSUMER FRUAD AND DECEPTIVE BUSINESS PRACTICES ACT)

99.      Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

100.      Plaintiffs assert this claim individually and on behalf of the Illinois Subclasses.

101.      The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq., prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

102.      Throughout the Class Period, Defendants conducted "trade" and "commerce" within the meaning of 815 ILCS 505/1(f) by its advertising, offering for sale, and sale of Rust-Oleum Restore paint.

103.      815 ILCS. 505/1(b) of the Illinois Consumer Fraud and Deceptive Business Practices Act defines the term "merchandise" to include Rust-Oleum Restore paint.

104.      815 ILCS. 505/1(c) of the Illinois Consumer Fraud and Deceptive Practices defines the term "person" to include Defendants.

105.      815 ILCS 505/1(e) of the Illinois Consumer Fraud and Deceptive Practices Act defines the term "consumer" to include Plaintiffs and the other Illinois Subclass members.

106.      Defendants' acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, including but not limited to, Defendants' sale of Rust-Oleum Restore paint.

23

107. Defendants intended for Plaintiffs and Subclass members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

108. Plaintiffs and the Subclass were exposed to such misrepresentations and were deceived.

109. Defendants' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act caused Plaintiffs and Subclass to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Rust-Oleum Restore paint and/or Defendants' failure to disclose the defects of said products, and/or paid to remove and/or replace failed Rust-Oleum Restore paint from Plaintiffs' and class members' structures.

110. Indeed, their purchases are of significantly diminished value because the Rust-Oleum Restore paint does not perform its sole function without the need for costly replacement and/or removal.

111. As a direct and proximate result of Defendants' unlawful acts described above, Plaintiffs have been injured and seek damages, as well as the declaratory and injunctive relief set forth below in the Prayer for Relief.

## COUNT V
### (UNJUST ENRICHMENT)

112. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

113. Plaintiffs and the Class have conferred substantial benefits on Defendants by purchasing Rust-Oleum paint products, and Defendants have knowingly and willingly accepted

and enjoyed these benefits.

114.    Defendants either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that Rust-Oleum paint would perform as represented and warranted. For Defendants to retain the benefit of the payments under these circumstances is inequitable.

115.    Defendants, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of Rust-Oleum paint reaped benefits, which resulted in Defendants' wrongful receipt of profits.

116.    Equity demands disgorgement of Defendants' ill-gotten gains. Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the Class.

117.    As a direct and proximate cause of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

## COUNT VI
### (NEGLIGENT MISREPRESENTATION)

118.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

119.    In making material misrepresentations of material facts regarding the characteristics and capabilities of Rust-Oleum paint through their advertising and product information publications that were in fact untrue, Defendants knew or should have known they were misrepresenting material facts and that the Plaintiffs and Class would be relying on

Defendants' representations to their detriment and damage.

120.    In concealing material facts regarding the characteristics and capabilities of Rust-Oleum paint, Defendants knew or should have known they were not disclosing material facts and that the Plaintiffs and the Class would be relying on Defendants' representation to their detriment and damage.

121.    Plaintiffs and the Class were unaware of the falsity of Defendants' representations, and as a result, they, or their contractor intermediaries, justifiably relied upon them in purchasing or applying Rust-Oleum paint products to their decks and patios.

122.    Defendants made the false representations in the course of their business with the intent that the Plaintiffs and the Class would rely on them and purchase or construct structures using Rust-Oleum paint.

123.    As a direct, proximate and foreseeable result of Defendants' failure to fully disclose material facts and its misrepresentations of material facts, Plaintiffs and the proposed Class suffered damage.

124.    As a result of Defendants' misconduct, Plaintiffs and the Class have suffered actual damages in that they purchased defective Rust-Oleum paint.

125.    As a result of Defendants' misconduct, Plaintiffs and the Class will suffer damages that include the full cost to repair their decks and patios. Damages also include, without limitation, consequential and incidental damages.

126.    As a direct, proximate and foreseeable result of Defendants' negligent misrepresentations, the Plaintiffs and the Class sustained damages in an amount to be determined at trial.

127.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT VII
### (NEGLIGENCE)

128.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

129.    Defendants owed a duty to Plaintiffs and the proposed Class to exercise reasonable care while designing, manufacturing, marketing, advertising, warranting and selling Rust-Oleum paint products.

130.    Defendants breached their duty to Plaintiffs and the Class by designing, manufacturing, selling, advertising, and warranting a defective product to Plaintiffs and the proposed Class and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

131.    Defendants knew or should have known that Rust-Oleum paint is defective and does not perform its intended use. Upon information and belief, initial testing included accelerated weathering tests that failed to account for many of the climates in which Rust-Oleum paint would be used.

132.    Despite lacking sufficient knowledge regarding the actual performance of Rust-Oleum paint, Defendants marketed the product as durable, long-lasting, and low maintenance.

133.    Plaintiffs and the proposed Class were not aware of Rust-Oleum paint's defective nature when they purchased the product.

134.    As a direct and proximate cause of Defendants' failures, Plaintiffs and the Class

have suffered and will continue to suffer damages and economic loss described fully above in an amount to be proven at trial.

135.    As a result of Defendants' negligence, Plaintiffs and the Class have suffered actual damages in that they purchased and applied on their home decks and other structures decking material that is defective and that has failed or is failing prematurely. This failure has required or is requiring Plaintiffs and the Class to incur significant expense in repairing their decks.

136.    Plaintiffs, on behalf of themselves and all other similarly situated, demand judgment against Defendants for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT VIII
### (DECLARATORY AND INJUNCTIVE RELIEF)

137.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

138.    Defendants acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

139.    Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

a.      Rust-Oleum paint manufactured until the present has defects which cause it to prematurely degrade and fail resulting in damage to deck and other structures and the necessity to repair related damage;

b.      Rust-Oleum paint manufactured until the present has a defect in workmanship and material that causes failures;

28

c.      Defendants knew of the defects in Rust-Oleum paint and that the warranties are unenforceable;

d.      Defendants shall re-audit and reassess all prior warranty claims on Rust-Oleum paint, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

e.      Defendants shall establish an inspection program and protocol to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether a Rust-Oleum paint failure is manifest.

## PRAYER FOR RELIEF

140.    WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered jointly and severally upon Defendants as follows:

A.      Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the class representatives, and designating the undersigned as class counsel;

B.      Declare that Defendants are financially responsible for notifying all Class members of the problems with Rust-Oleum paint;

C.      Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of Rust-Oleum paint, or order Defendants to make full restitution to Plaintiffs and the members of the Class;

D.      Defendants shall re-audit and reassess all prior warranty claims regarding Rust-Oleum paint, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds;

E.      For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

F.      For actual damages sustained or treble damages;

G.      For punitive or exemplary damages;

H.      For injunctive and declaratory relief;

I.      For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.      For such other and further relief as this Court deems just and appropriate.


## **JURY DEMAND**

141.    Plaintiffs hereby demand a trial by jury on all issues so properly triable thereby.


Dated: January 7, 2015                          Respectfully Submitted,

                                        By:     /s/ Richard J. Burke
                                                Richard J. Burke **#  6255504**
                                                **QUANTUM LEGAL LLC**
                                                1010 Market Street, Suite 1310
                                                St. Louis, MO 63101
                                                Phone:     847-433-4500
                                                Fax:   847-433-2500
                                                Email: richard@QUlegal.com

                                                Jonathan Shub
                                                *(Pro Hac Vice Forthcoming)*
                                                **SEEGER WEISS LLP**
                                                1515 Market St., Suite 1380
                                                Philadelphia, PA 19102
                                                Phone: (215) 564-2300
                                                Fax: (215) 851-8029
                                                Email: jshub@seegerweiss.com

                                                *Attorney for Plaintiffs and the*
                                                *Proposed Class*

declaratory relief. This class action is brought to remedy violations of law in connection with Defendants' design, manufacture, marketing, advertising, selling and warranting of their Rust-Oleum Restore paint products ("Rust-Oleum paint") used to resurface outdoor wood and concrete decks and patios, as well as related and attached structures. Defendants' paint product contains serious design and manufacturing defects, making them susceptible to bubbling, peeling, cracking, flaking, chipping, and general degradation after proper application.

3.      The Rust-Oleum paint fails prematurely, which requires consumers to replace the product at their expense. As such, Plaintiffs assert claims for violation of the Magnuson-Moss Act, breach of implied warranties, breach of express warranty, violation of the Illinois Consumer Protection Laws, unjust enrichment, negligent misrepresentation, negligence, and declaratory and injunctive relief.

4.      Defendants designed, manufactured, marketed, advertised, warranted and sold Rust-Oleum paint to Plaintiffs and the Class as well as the general public. Defendants advertised that Rust-Oleum was fit for the ordinary purpose for which such goods were used and satisfaction guaranteed.

5.      Rust-Oleum paint is a water-based acrylic paint with a blend of inorganic and organic pigments.

6.      Defendants warrant that its Rust-Oleum paint is designed to resiliently protect a consumer's existing decking and related structures with minimal maintenance.

7.      Indeed, Defendants advertise on their website that the Rust-Oleum paint offers "a high-performance, low-maintenance, long-lasting alternative to the endless cycle of repairing and repainting" structures.

2

8.     Defendants also represent that their paint is thicker than ordinary paint, which allows it to mask imperfections such as cracks and splinters, and that their paint restores decks and patios to a uniform presentation.

9.     However, Defendants knew, prior to the time of sale that their Rust-Oleum paint was defective, and in fact cracked, chipped, bubbled, peeled, and generally deteriorated shortly after application and before the warranty period expired.

10.     Plaintiffs relied on Defendants' representations, and as a result of Defendants' failure to properly develop, test, and ensure that its Rust-Oleum paint was properly designed Plaintiffs and the Class have suffered damages.

11.     Defendants are responsible and liable for, among other things, the costs of removing and replacing the Rust-Oleum paint installed in the homes, offices, buildings and other structures of Plaintiffs and members of the proposed Class, as well as other related consequential damages that resulted from Defendants' defective Rust-Oleum paint that has failed prematurely.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because Plaintiffs and Defendants are of diverse citizenship and the aggregate amount in controversy exceeds five million dollars ($5,000,000.000) exclusive of interest and costs. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the property that is the subject of this action is situated in this District, substantial events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants are subject to personal jurisdiction in this District.

13.     Defendants contemplated the sale, distribution, and use of Rust-Oleum paint products in this District.

14.     As a result of the Defendants' design, manufacture, marketing, advertising, selling and warranting of Rust-Oleum paint products to purchasers throughout Illinois, the Defendants obtained the benefits of the laws of Illinois commerce.

15.     Defendants conducted systematic and continuous business activities in and throughout the state of Illinois through the promotion of marketing of its business.

**PARTIES**

16.     Plaintiffs David and Kathleen Sullivan are married residents of Murphysboro, Illinois. They purchased and used Rust-Oleum Restore brand paint on their residential deck in October 2013.

17.     Defendant Rust-Oleum Corporation is a subsidiary of RPM International, Inc. Rust-Oleum Corporation makes protective paints and coatings for homes and businesses. Its corporate headquarter is located in Vernon Hills, Illinois.

18.     Defendant RPM International Inc. is a Delaware corporation that has its principal place of business in Medina, Ohio. RPM International Inc. is the holding company for Rust-Oleum Corporation and Synta Incorporated.

19.     Synta, Incorporated is a subsidiary of RPM International, Inc. Synta Incorporated is a wholesale paint manufacturer. Its corporate headquarters are located in Clarkston, Georgia.

4

## COMMON FACTUAL ALLEGATIONS

20.     Defendants hold themselves out to the public as manufacturers of durable and long lasting paint products with "trusted quality since 1921." Defendants designed, developed, manufactured, tested, marketed, warranted and sold Rust-Oleum paint products directly and indirectly, through distributors, to Plaintiffs, Class members, subcontractors, and/or agents.

21.     Defendants represent to consumers that Rust-Oleum paint is designed to refresh decks and patios by forming a "tough [sic] resilient coating over existing deck" which will "last for years with less maintenance than deck paints or stains! Satisfaction guaranteed."

22.     Defendants provided the following limited lifetime warranty on all of the Rust-Oleum Restore paint products: "[Defendants] warrant complete satisfaction with the performance of this product for as long as you own or reside in your home when the product has been applied according to the directions provided."

23.     Despite Defendants' express and implied warranties and claims that the products are fit for ordinary purposes, Rust-Oleum  paint fails to deliver as promised and expected. Furthermore, Defendants have failed to fully honor existing warranties and failed to compensate Plaintiffs under their warranties and applicable law. Moreover, because Defendants had been aware of the defective nature of their Rust-Oleum paint, any limitations on Defendants' warranties are unconscionable and/or fail their essential purpose because Rust-Oleum paint was defective at the time Plaintiffs and members of the class acquired Rust-Oleum paint.

24.     Prior to purchasing the defective products, Plaintiffs and members of the class had no notice of the defect and no way of learning about the defect other than from Defendants.

25.     The bargaining power between Plaintiffs (and members of the Class) and Defendants was unequal and any limitations on the warranty are substantially one-sided, making such limitations unconscionable.

26.     Despite Defendants' representations to consumers, Rust-Oleum paint is plagued with design and manufacturing flaws that cause the paint to bubble, peel, crack, flake, and chip shortly after installation.

27.     Additionally, removal and replacement of the defective Rust-Oleum paint requires a labor-intensive, expensive process that may damage or destroy the underlying substrate and carries with it substantial costs to Plaintiffs and members of the class.

28.     Defendants and their authorized agents and distributors made incorrect representations about their product with the intent and purpose of inducing suppliers, builders, and consumers to purchase and use Rust-Oleum paint on their decks, patios and other structures in residential and commercial structures in the state of Illinois and elsewhere.

29.     Upon information and belief, Defendants also made numerous material omissions in its advertising and promotional literature and uniformly withheld important information relating to the design, reliability, and performance of Rust-Oleum paint.

30.     Defendants continue to make false representation about the quality and fitness of the Rust-Oleum paint.  For instance, in a video which appears on Defendants' YouTube page titled "Rust-Oleum Restore Case Study," Defendants claim that "Restore is different than a lot of other decking protectors because it's ten times thicker than stains and paints.  It's going to lock down splinters . . . fill in cracks . . . fill in nail holes."  Defendants also advertise that Restore "will last 10 to 12 years."  *See* https://www.youtube.com/watch?v=-IcXA8966b4.

6

31.     Furthermore, in a television advertisement, Defendants claim that they "created a Restore designed to refresh and designed to repair" worn out decks to a "durable finish." *See* http://www.ispot.tv/ad/7KAQ/rust-oleum-restore-compare.

32.     Had Defendants not withheld and omitted important information about the design, reliability, and performance of Rust-Oleum paint, Plaintiffs and members of the Class would not have purchased the products or used them on their properties.

33.     Defendants knew or should have known that the foregoing defects made the Rust-Oleum paint susceptible to premature failure through various processes.

34.     Defendants' design and materials choices have created a product that begins to fail on its first day of use, despite proper installation and use in its intended environment.

35.     Because of the defective design and manufacture, Defendants' Rust-Oleum paint failed in its intended purpose.

36.     Because of the defective design and manufacture, Defendants' Rust-Oleum paint is inherently defective and is substantially certain to fail within the express warranty provided by Defendants or the useful life of the decking.

37.     Upon information and belief, Defendants did not test their Rust-Oleum paint in its anticipated environments before selling the product to the public.

38.     Upon information and belief, Defendants conducted inadequate testing on Rust-Oleum paint and failed to test for things that they knew or should have known would lead to premature failure.

39.     Upon information and belief, Defendants failed to investigate or test whether well-known and expected conditions would lead to premature failure of Rust-Oleum paint.

7

40.     Upon information and belief, Defendant Rust-Oleum Corporation limits its offer of warranty payment to their estimate of the purchase price of Rust-Oleum paint—just a fraction of the costs associated with the replacement of the Rust-Oleum paint.

41.     Defendants knew or reasonably should have known that Rust-Oleum paint products were defective prior to the time of sale, and intentionally concealed that material information (and the truth concerning their product) from Plaintiffs and the general public, while continually marketing Rust-Oleum paint as a dependable and reliable product. Defendants' acts of negligent misrepresentation include failing to disclose that their Rust-Oleum paint was defectively manufactured or designed and would deteriorate in less than the expected lifetime, leading to damage to the very structures they were purchased to protect.

42.     Because the defects in Rust-Oleum paint are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Rust-Oleum paint was defective and unreliable and certain to fail until after painting their entire decks, despite their exercise of due diligence.

43.     Defendants had a duty to disclose that their Rust-Oleum paint was defective, unreliable, and inherently flawed in its design and manufacture.

## PLAINTIFFS' EXPERIENCE WITH RUST-OLEUM RESTORE

44.     Plaintiffs David and Kathleen Sullivan purchased Rust-Oleum Restore brand paint in October 2013 at Wright Do-It Center in Murphysboro, Illinois.

45.     Prior to purchasing Rust-Oleum paint, Plaintiffs reviewed Defendants' website (created by Rust-Oleum Corporation to market Rust-Oleum paint). Specifically, Plaintiffs viewed promotional videos presented by Defendants on their website as well as at

retail outlets. (Upon information and belief, RPM International Inc. and Synta, Inc. participated in Rust-Oleum paint marketing.)

46.     Prior to purchasing Rust-Oleum's Restore paint, Plaintiffs relied on Defendants' reputation, as well as Defendants' advertisements, including but not limited to print and internet advertising and marketing materials.

47.     Plaintiffs applied Rust-Oleum Restore to their deck by following Defendants' instructions for preparation and application.

48.     Within only one (1) month of applying Defendants' Rust-Oleum Restore brand paint to their deck, the Sullivans noticed that the Rust-Oleum paint on their deck was beginning to chip, crack and generally deteriorate.

49.     The problem has only continued to worsen with the passage of time and will continue to do so until it is fully removed.

50.     Pictures of Plaintiffs' deck subsequent to applying the Rust-Oleum Restore paint can be seen below:





10

51.     In June 2014 Plaintiffs contacted Rust-Oleum via email to notify Defendants of the chipping, cracking and deterioration their deck was experiencing and to ask what could be done to remedy, prevent or restore the damage and deterioration they were experiencing.

52.     In response to their June 2014 inquiry, Plaintiffs were asked to fill out a form from Defendants asking how much Rust-Oleum paint they purchased and when they purchased the product.  Additionally, Defendants asked Plaintiffs to submitted pictures of their decking.  Plaintiffs filled out this form and submitted it with pictures of their decking to Defendants.

53.     As a result of the claim form Plaintiffs submitted, they received a check for approximately $300.00, which represents the amount they spent on Defendants' Rust-Oleum  Restore  paint exclusive of any additional costs.

54.     In an effort to remove the unsightly chipped and cracked paint, Plaintiffs have hired an individual to power wash their deck which has cost Plaintiffs approximately $200 in labor costs.  Because only a small portion of their decking has been cleaned thus far, Plaintiffs will continue to pay the labor costs to finish the cleaning of their deck.

## CONSUMER COMPLAINTS ABOUT RUST-OLEUM RESTORE

55.     Plaintiffs are not alone in their experience with the defective Rust-Oleum Restore paint.  Indeed, numerous negative reviews and complaints have appeared on the Internet.  For instance, on Amazon.com, Rust-Oleum Restore paint received 151 total reviews.  Of those 151 reviews, 118 gave the product 1-star (the lowest rating on Amazon.com's rating scale).

56.     Below are just a few consumer complaints from Amazon.com and other websites:

11

**On December 23, 2014, Erin F. Gentile gave the product 1 star and wrote:**

Deserves ZERO STARS!! Faulty product! Lives up to ZERO of it's promises. I'm so angry!
Applied in September this year -- followed directions EXACTLY. Looked good for about 48
hours, then started peeling, chipping and disintegrating as weather became colder and wetter. Just
used my shop vac to remove gallons of sandy mess from front porch and steps. Why is this product
allowed to be sold anywhere??

*See* http://www.amazon.com/Rust-Oleum-49104-Deck-Concrete-1-Gallon/product-
reviews/B00BIOBP7Y/ref=cm_cr_pr_hist_1?ie=UTF8&filterBy=addOneStar&showViewpoints=0
&sortBy=bySubmissionDateDescending

**On August 17, 2014, K. Cooper gave the product 1 star and wrote:**

Total waste of money. Lots of money. Didn't last the winter. Huge chunks are missing. For all that
time prepping, applying, and the ton of money we paid, I am beyond disappointed. We are not
painting novices. This product is terrible. I am really disappointed in Rustoleum. I used their oil
paint on my cupboards 7 years ago and they still look great. I trusted the Rustoleum name and it
was a mistake. I will contact the company but I'm sure it will somehow be our fault. For people in
northern Michigan, the only one who did not have peeling was someone with a roof over their
deck. Everyone else I talked to up here had problems.

*See* http://www.amazon.com/Rust-Oleum-49104-Deck-Concrete-1-Gallon/product-
reviews/B00BIOBP7Y/ref=cm_cr_pr_btm_link_next_2?ie=UTF8&filterBy=addOneStar&pageNu
mber=2&showViewpoints=0&sortBy=bySubmissionDateDescending

12

**On May 20, 2014, Cathy from Munster, IN gave the Restore product a "1-star" review and wrote:**

So much time on prepping the old deck and followed the directions for cleaning. Applied first coat on completely dried deck, in the shade, 75 degree morning. Had to buy another 4 gallon bucket. Applied 2nd coat, day 2.. Another beautiful fall day in the Chicago area. Morning shade. We loved it. Looked great. Happy. Then winter came.... it looks horrible now...... I'm sickened and disappointed!! I busted my butt. Back pain from bending over preparing, rolling, and rolling again. Pain was worth the result, but the result did not last a year!! Rustoleum needs to refund my money and pay for someone to pressure wash this Restore flaking mess off my deck now!

*See* http://www.homedepot.com/p/Restore-5-gal-4X-Deck-Coat-41500/204752026.

**On January 29, 2014, Sylvienjeff wrote:**

We just got through using Restore for decks/concrete. We did everything according to directions. We waited for multiple days of sunshine before we started project. We did not dilute. First coat Sun. 1/26 @ 8:00 am-finish 12:00. Second coat Mon. 1/27 @12:30 pm-finish 4:30 (24 hours before second coat because it wasn't dry enough). Wasn't dry enough to walk on by Tuesday, wasn't dry enough to walk on by Wednesday, today. Wednesday 1:45 we had rain. The whole pool deck is melting away. Totally washing off!!!!! From second coat on Monday to Wednesday, there was 48 hours of drying time less about 3 hours. We had sunshine all those days, and now it's melting away! It never dried! It's going to cost us a fortune to have someone come in and un-do what has happened, and re-do the entire deck. We have invested $700.00 for product in this project, not to mention our hard work, and a day off from work on Monday to put 2nd coat down! Just went to look again. We have a catastrophe here. The deck drain is now clogged with product,

13

and it's going everywhere. My fear is that it goes in the pool which if it keeps raining, it will. I wish we knew how to get this stuff off. Maybe if we keep it wet, we can power wash it off, and start again. We're so upset about this. Our deck looked bad to begin with, old and cracked....But it looked better then than it does now!!!!!!!!!

*See*     http://www.city-data.com/forum/house/1879095-anyone-have-experience-rustoleum-deck-concrete-3.html

**On May 28, 2014, n1iwv wrote:**

I applied Rust-Oleum Restore to my deck mid August 2013.

We followed the manufacture's instructions religiously. We also watched their video for product application. We used Rust-Oleum deck cleaner for preparation and their special roller for application.

Fast forward to March 2014 and this stuff is peeling and cracking everywhere.

The failure mode is either peeling up in large sheets or it crumbles when you step on it.

The major problem is that in sections of the deck where it neither peels nor crumbles, its removal is all but impossible without destroying the wood decking.

The only thing I can do now is pull up the fir decking and either replace it (very expensive) or turn the decking over, put it back down and use a conventional stain (labor intensive).

Needless to say, "I am not happy".

*See*     http://www.city-data.com/forum/house/1879095-anyone-have-experience-rustoleum-deck-concrete-4.html#ixzz3O3bERhrY

14

## CLASS ACTION ALLEGATIONS

57.     This action is brought and may be maintained as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Plaintiffs and all others similarly situated. The proposed Class is defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, in which Rust-Oleum paint products is or has been used.

> Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which have a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Additionally or alternatively, Plaintiffs propose as Illinois class or subclass (the "Subclass") defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in Illinois, in which Rust-Oleum paint products is or has been used.

> Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which have a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

58.     Plaintiffs reserve the right to redefine the Class(es) prior to class certification.

59.     The members of the proposed Class are so numerous that joinder of all members is impracticable.

60.     The exact number of Class members is unknown as such information is in the exclusive control of Defendants. However, due to the nature of the trade and commerce involved, Plaintiffs believe the Class consists of thousands of consumers.

15

61.     Common questions of law and fact affect the right of each Class member and a common relief by way of damages is sought for Plaintiffs and Class members.

62.     The harm that Defendants caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

a.     Whether Rust-Oleum paint is defective in that it fails prematurely and is not suitable for use as an exterior decking product for the length of time advertised, marketed, and warranted;

b.     Whether Rust-Oleum paint is defectively designed or manufactured;

c.     Whether Defendants sold and entered a defective product into the stream of commerce in Illinois and other states;

d.     Whether Rust-Oleum failed to perform in accordance with the reasonable expectations of ordinary consumers;

e.     Whether Defendants failed to prevent damages which occurred as a result of defective Rust-Oleum paint they designed, manufactured and placed into the stream of commerce;

f.     Whether Defendants properly warned consumers about the reasonably foreseeable defective nature of Rust-Oleum paint;

g.     Whether Defendants were unjustly enriched by the sale of defective Rust-Oleum paint;

h.     Whether Defendants breached its warranties as represented and engaged in fraudulent, false, deceptive or misleading advertising and misconduct with respect to the handling of warranty claims;

i.     Whether Defendants omitted material information when they sold Rust-Oleum paint;

j.     Whether members of the proposed Class have sustained damages and, if so, the proper measure of such damages; and

k.     Whether Defendants should be declared financially responsible for notifying all Class members about their defective Rust-Oleum paint and for all damages associated with the incorporation of such decking into Class members' homes,

16

residences, buildings, and other structures.

63.     The claims and defenses of the named Plaintiffs are typical of the claims and defenses of the Class. Plaintiffs and all members of the class own or have owned homes, residences, or other structures on which Rust-Oleum paint has been used. The product has failed, and will continue to fail prematurely. The named Plaintiffs, like all Class members, have been damaged by Defendants' conduct in that they have incurred or will incur the costs of repairing or replacing their decks and repairing the additional property and structure damaged by the Rust-Oleum paint's premature failure. Furthermore, the factual basis of Defendants' conduct is common to all Class members and represents a common thread of deliberate, fraudulent, and negligent misconduct resulting in injury to all members of the Class.

64.     The named Plaintiffs will fairly and adequately assert and protect the interests of the Class. Specifically, they have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class and they have no conflict of interest that will interfere with the maintenance of this class action.

65.     A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.      The common questions of law and fact set forth herein predominate over any questions affecting only individual class members;

b.      The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

c.      There are no unusual legal or factual issues which would create manageability problems;

d.      Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

17

e.     Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

f.     The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which class members can, as a practical matter, recover. However, the claims of individual Class members are large enough to justify the expense and effort in maintaining a class action.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

66.     Plaintiffs and putative members of the Class are within the applicable statute of limitation for the claims presented here. Defendants' failure to disclose this known but non public information about the defective nature of their Rust-Oleum paint – information over which they had exclusive control – and because Plaintiffs and Class Members therefore could not reasonably have known that the Products were defective, Defendants are estopped from asserting any statute of limitation defenses that might otherwise be applicable to the claims asserted herein.

## CAUSES OF ACTION

### COUNT I
### (VIOLATION OF MAGNUSON-MOSS ACT)

67.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

68.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (the "Act") in response to widespread complaints from consumers that many warranties were misleading and deceptive. The Act imposes civil liability on any "warrantor" for, *inter alia*, failing to comply with any obligation under a written warranty and/or implied warranty. *See* 15

U.S.C. § 2310(d)(1).

69.     Rust-Oleum paint products are "consumer products" as that term is defined by 15 U.S.C. §2301(1).

70.     Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. §2301(3).

71.     Defendants are "warrantors" and "suppliers" as those terms are defined by 15 U.S.C. §2301(4) and (5).

72.     Defendants have failed to remedy the defects associated with Rust-Oleum paint, despite knowledge of its propensity to prematurely bubble, peel, crack, flake, chip, and degrade after application.

73.     By Defendants' conduct as described herein, including Defendants' knowledge of the defective Rust-Oleum paint, and its actions, and inaction, in the face of that knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

74.     As a result of Defendants' breach of implied warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Rust-Oleum paint, obtain damages and equitable relief, and obtain attorneys' fees and cost pursuant to 15 U.S.C. §2310.

## COUNT II
### (BREACH OF IMPLIED WARRANTIES)

75.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

76.     Defendants designed, manufactured, marketed, advertised, warranted and sold Rust-Oleum paint for purposes of its eventual sale to retail buyers.

19

77. Defendants impliedly warranted that Rust-Oleum paint products were properly designed, developed, manufactured, distributed, marketed, sold, and installed and that the designs and materials were proper and of workmanlike quality.

78. Defendants knew and intended that Rust-Oleum paint would be constantly applied on exterior decks and patios throughout the United States where it would be exposed to high temperature and humid conditions in the summer, freezing temperatures and extremely dry air in the winter, and repeated freeze-thaw cycles.

79. Rust-Oleum paint is not merchantable because it has a propensity to bubble, peel, crack, flake, chip, or otherwise prematurely degrade that renders it unfit for the ordinary use of deck constructions and the quality is objectionable in the trade.

80. Defendants knew that Plaintiffs and the Class would use Rust-Oleum paint to cover and protect decks and patios, and Plaintiffs and the Class relied upon Defendants' skill and judgment to furnish suitable decking material. Rust-Oleum paint is not fit for its intended purpose because it has a propensity to bubble, peel, crack, flake, chip, or otherwise prematurely degrade.

81. Plaintiffs and the Class relied upon said warranties and the claims, skill, expertise, and quality assurance of Defendants' workers to provide suitable goods.

82. Defendants breached said warranties by failing to provide adequate and proper designs, calculations, or materials in n the design and manufacture of Rust-Oleum paint.

83. Rust-Oleum paint fails to perform in accordance with the reasonable expectations of Plaintiffs and the Class and the benefits of the design of Rust-Oleum paint do not outweigh the risk of its failure.

20

84.     Defendants had, and have, a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of Rust-Oleum paint; Defendants further had, and have, a duty not to put defective products on the market.

85.     But for Defendants' breach of implied warranty, Plaintiffs and the proposed Class would not have sustained damages.

86.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class have suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

87.     Plaintiffs, on behalf of themselves and all other similarly situated, demand judgment against Defendants for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT III
## (BREACH OF EXPRESS WARRANTY)

88.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

89.     Defendants made affirmations of fact and promises to Plaintiffs and members of the Class which related to Rust-Oleum paint as more fully described herein.

90.     Defendants' affirmation of fact and promises became part of the basis of the bargain between the parties.

91.     These affirmations of fact and promises created an express warranty that Rust-Oleum paint would conform to Defendants' affirmations and promises.

92.     Defendants uniformly warranted all of Rust-Oleum paint against defects in material or workmanship at a time when they knew that it suffered from serious defects and,

nevertheless, continued to market and sell Rust-Oleum paint with this express warranty.

93.     The misrepresentations were made by Defendants to induce Plaintiffs and the Class members to purchase, and were material factors in their decisions to purchase Rust-Oleum paint.

94.     Defendants are obligated under the terms of their written warranty to replace the defective Rust-Oleum paint sold to Plaintiffs and Class members.

95.     Defendants have breached their written warranty, as set forth above, by supplying the Rust-Oleum paint in a condition which does not meet the warranty obligations undertaken by Defendants, and by failing to repair the damages caused by the defective product.

96.     As set forth above, Defendants' warranty fails in its essential purpose and, accordingly, Plaintiffs and Class members cannot and should not be limited to the remedies set forth in the written warranty and instead should be permitted to recover all measures of appropriate relief.

97.     The limitations of damages and the limitations contained in the express warranty provisions are harsh, oppressive and one-sided. The limitations related to the amount of damages, the type of remedies available to Plaintiffs and Class Members are unconscionable when Defendants knew or should have known that there are defects in the design and manufacturing of Rust-Oleum paint.

98.     As a direct and proximate result of Defendants' conduct and failure to conform to representations in breach of Defendants' express warranties, Plaintiffs and Class members have suffered damages, injury in fact and/or ascertainable loss in an amount to be determined at trial.

## COUNT IV
## (VIOLATION OF ILLINOIS CONSUMER FRUAD AND
## DECEPTIVE BUSINESS PRACTICES ACT)

99.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

100.     Plaintiffs assert this claim individually and on behalf of the Illinois Subclasses.

101.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq., prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

102.     Throughout the Class Period, Defendants conducted "trade" and "commerce" within the meaning of 815 ILCS 505/1(f) by its advertising, offering for sale, and sale of Rust-Oleum Restore paint.

103.     815 ILCS. 505/1(b) of the Illinois Consumer Fraud and Deceptive Business Practices Act defines the term "merchandise" to include Rust-Oleum Restore paint.

104.     815 ILCS. 505/1(c) of the Illinois Consumer Fraud and Deceptive Practices defines the term "person" to include Defendants.

105.     815 ILCS 505/1(e) of the Illinois Consumer Fraud and Deceptive Practices Act defines the term "consumer" to include Plaintiffs and the other Illinois Subclass members.

106.     Defendants' acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, including but not limited to, Defendants' sale of Rust-Oleum Restore paint.

23

107.    Defendants intended for Plaintiffs and Subclass members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

108.    Plaintiffs and the Subclass were exposed to such misrepresentations and were deceived.

109.    Defendants' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act caused Plaintiffs and Subclass to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Rust-Oleum Restore paint and/or Defendants' failure to disclose the defects of said products, and/or paid to remove and/or replace failed Rust-Oleum Restore paint from Plaintiffs' and class members' structures.

110.    Indeed, their purchases are of significantly diminished value because the Rust-Oleum Restore paint does not perform its sole function without the need for costly replacement and/or removal.

111.    As a direct and proximate result of Defendants' unlawful acts described above, Plaintiffs have been injured and seek damages, as well as the declaratory and injunctive relief set forth below in the Prayer for Relief.

## COUNT V
### (UNJUST ENRICHMENT)

112.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

113.    Plaintiffs and the Class have conferred substantial benefits on Defendants by purchasing Rust-Oleum paint products, and Defendants have knowingly and willingly accepted

24

and enjoyed these benefits.

114.     Defendants either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that Rust-Oleum paint would perform as represented and warranted. For Defendants to retain the benefit of the payments under these circumstances is inequitable.

115.     Defendants, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of Rust-Oleum paint reaped benefits, which resulted in Defendants' wrongful receipt of profits.

116.     Equity demands disgorgement of Defendants' ill-gotten gains. Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the Class.

117.     As a direct and proximate cause of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

### COUNT VI
### (NEGLIGENT MISREPRESENTATION)

118.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

119.     In making material misrepresentations of material facts regarding the characteristics and capabilities of Rust-Oleum paint through their advertising and product information publications that were in fact untrue, Defendants knew or should have known they were misrepresenting material facts and that the Plaintiffs and Class would be relying on

25

Defendants' representations to their detriment and damage.

120.    In concealing material facts regarding the characteristics and capabilities of Rust-Oleum paint, Defendants knew or should have known they were not disclosing material facts and that the Plaintiffs and the Class would be relying on Defendants' representation to their detriment and damage.

121.    Plaintiffs and the Class were unaware of the falsity of Defendants' representations, and as a result, they, or their contractor intermediaries, justifiably relied upon them in purchasing or applying Rust-Oleum paint products to their decks and patios.

122.    Defendants made the false representations in the course of their business with the intent that the Plaintiffs and the Class would rely on them and purchase or construct structures using Rust-Oleum paint.

123.    As a direct, proximate and foreseeable result of Defendants' failure to fully disclose material facts and its misrepresentations of material facts, Plaintiffs and the proposed Class suffered damage.

124.    As a result of Defendants' misconduct, Plaintiffs and the Class have suffered actual damages in that they purchased defective Rust-Oleum paint.

125.    As a result of Defendants' misconduct, Plaintiffs and the Class will suffer damages that include the full cost to repair their decks and patios. Damages also include, without limitation, consequential and incidental damages.

126.    As a direct, proximate and foreseeable result of Defendants' negligent misrepresentations, the Plaintiffs and the Class sustained damages in an amount to be determined at trial.

127. Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT VII
## (NEGLIGENCE)

128. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

129. Defendants owed a duty to Plaintiffs and the proposed Class to exercise reasonable care while designing, manufacturing, marketing, advertising, warranting and selling Rust-Oleum paint products.

130. Defendants breached their duty to Plaintiffs and the Class by designing, manufacturing, selling, advertising, and warranting a defective product to Plaintiffs and the proposed Class and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

131. Defendants knew or should have known that Rust-Oleum paint is defective and does not perform its intended use. Upon information and belief, initial testing included accelerated weathering tests that failed to account for many of the climates in which Rust-Oleum paint would be used.

132. Despite lacking sufficient knowledge regarding the actual performance of Rust-Oleum paint, Defendants marketed the product as durable, long-lasting, and low maintenance.

133. Plaintiffs and the proposed Class were not aware of Rust-Oleum paint's defective nature when they purchased the product.

134. As a direct and proximate cause of Defendants' failures, Plaintiffs and the Class

27

have suffered and will continue to suffer damages and economic loss described fully above in an amount to be proven at trial.

135.    As a result of Defendants' negligence, Plaintiffs and the Class have suffered actual damages in that they purchased and applied on their home decks and other structures decking material that is defective and that has failed or is failing prematurely. This failure has required or is requiring Plaintiffs and the Class to incur significant expense in repairing their decks.

136.    Plaintiffs, on behalf of themselves and all other similarly situated, demand judgment against Defendants for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT VIII
## (DECLARATORY AND INJUNCTIVE RELIEF)

137.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

138.    Defendants acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

139.    Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

a.    Rust-Oleum paint manufactured until the present has defects which cause it to prematurely degrade and fail resulting in damage to deck and other structures and the necessity to repair related damage;

b.    Rust-Oleum paint manufactured until the present has a defect in workmanship and material that causes failures;

28

c.   Defendants knew of the defects in Rust-Oleum paint and that the warranties are unenforceable;

d.   Defendants shall re-audit and reassess all prior warranty claims on Rust-Oleum paint, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

e.   Defendants shall establish an inspection program and protocol to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether a Rust-Oleum paint failure is manifest.

## PRAYER FOR RELIEF

140.   WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered jointly and severally upon Defendants as follows:

A.   Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the class representatives, and designating the undersigned as class counsel;

B.   Declare that Defendants are financially responsible for notifying all Class members of the problems with Rust-Oleum paint;

C.   Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of Rust-Oleum paint, or order Defendants to make full restitution to Plaintiffs and the members of the Class;

D.   Defendants shall re-audit and reassess all prior warranty claims regarding Rust-Oleum paint, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds;

E.   For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

F.   For actual damages sustained or treble damages;

G.   For punitive or exemplary damages;

H.   For injunctive and declaratory relief;

I.   For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

29

J.      For such other and further relief as this Court deems just and appropriate.


## JURY DEMAND

141.    Plaintiffs hereby demand a trial by jury on all issues so properly triable thereby.


Dated: January 7, 2015                          Respectfully Submitted,

                                        By:     /s/ Richard J. Burke
                                                Richard J. Burke **#  6255504**
                                                **QUANTUM LEGAL LLC**
                                                1010 Market Street, Suite 1310
                                                St. Louis, MO 63101
                                                Phone:    847-433-4500
                                                Fax:   847-433-2500
                                                Email: richard@QUlegal.com

                                                Jonathan Shub
                                                *(Pro Hac Vice Forthcoming)*
                                                **SEEGER WEISS LLP**
                                                1515 Market St., Suite 1380
                                                Philadelphia, PA 19102
                                                Phone: (215) 564-2300
                                                Fax: (215) 851-8029
                                                Email: jshub@seegerweiss.com

                                                *Attorney for Plaintiffs and the*
                                                *Proposed Class*